IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FRANKLIN JENKINS,<br><br>      Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>*Acting Commissioner of the*<br>*Social Security Administration*,<br><br>      Defendant. | MEMORANDUM DECISION<br><br>Case No. 2:12-cv-01202-DBP<br><br>Magistrate Judge Dustin B. Pead |

## I.    INTRODUCTION

This matter came before the Court under 28 U.S.C. § 636(c).  (Docket No. 15.)  Plaintiff appeals the Social Security Commissioner's decision denying his disability insurance benefits ("DIB") claim under Titles II of the Social Security Act ("Act").  (Dkt. No. 3.)  After considering the parties' briefs, the administrative record, and the relevant law, the Court **AFFIRMS** the Commissioner's decision.

## II.    PROCEDURAL HISTORY

On June 16, 2009, Plaintiff protectively filed a Title II DIB application.  (Tr. 152-58, 184.)  He alleged November 20, 2008 as his disability onset date.  (*Id.* 184.)  On September 10, 2009, the Commissioner initially denied the application.  (*Id.* 95.)  On November 13, 2009, the Commissioner denied it upon reconsideration.  (*Id.* 96.)  On August 15, 2011, Plaintiff received a

hearing before an administrative law judge ("ALJ").  (Tr. 39-86.)  On September 13, 2011, the ALJ issued a decision declining to find Plaintiff disabled.  (*Id.* 19-33.)  On December 4, 2012, the Appeals Council denied Plaintiff's request for review.  (*Id.* 1-3.)  This denial made the ALJ's decision the Commissioner's final decision for appeal purposes.  20 C.F.R. § 404.981.

### III.    STATEMENT OF RELEVANT LAW

#### A.  Definition of Disability Under the Act

The Act states that an individual is disabled "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  The disabling impairment must last or be expected to last for twelve months.  *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

#### B.  Process for Determining Disability Under the Act

To determine disability, social security regulations set forth a five-step sequential evaluation process.  The adjudicator considers whether a claimant: (1) engaged in substantial gainful activity during the alleged disability period, (2) has a severe impairment, (3) has a severe impairment that meets or medically equals a listed impairment, (4) could return to his past relevant work, and if not (5) could perform other work.  20 C.F.R. § 404.1520(a)(4).

### IV.    ALJ DECISION

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 20, 2008.  (Tr. 21.)  At step two, the ALJ found Plaintiff suffered the following severe impairments: (1) degenerative joint disease of bilateral shoulders and knees, (2) cervical spondylosis, (3) diffuse arthralgias, (4) obesity, and (5) depression.  (*Id.* 21-22.)  At step three,

the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listed impairment.  (*Id.* 22-23.)

Between steps three and four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with numerous physical limitations.  (*Id.* 23-31.)  For instance, the ALJ concluded that Plaintiff could only occasionally lift and carry twenty pounds.  (Tr. 24.)  Plaintiff could only stand/walk twenty minutes at a time for a total of two hours in an eight hour workday.  (*Id.*)  Plaintiff could only sit one hour at a time for a total of six hours in an eight hour workday.  (*Id.*)  Plaintiff needed the option to alternate between sitting and standing at will.  (*Id.*)  Plaintiff could only occasionally climb ramps, stairs, scaffolds, ladders, and ropes.  (Tr. 24.)  Similarly, Plaintiff could only occasionally balance, stoop, kneel, crouch, and overhead reach with both arms.  (*Id.*)  Plaintiff could never crawl.  (*Id.*)

At step four, the ALJ concluded Plaintiff could not perform past relevant work as a heating and air conditioning installer, construction worker, or tool rental clerk.  (*Id.* 31.)  At step five, the ALJ concluded that Plaintiff could perform a significant number of jobs in the national economy such as a parking lot attendant, office helper, or charge account clerk.  (Tr. 31-33.)

## V. STANDARD OF REVIEW ON APPEAL

A district court reviews the Commissioner's decision to determine whether substantial evidence in the record supports the factual findings and whether the Commissioner applied the correct legal standards.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*. (quotation omitted).  The court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's."  *Id.*

## VI.     PLAINTIFF'S APPEAL

On appeal, Plaintiff argues the ALJ made two errors that require remand.  The ALJ erred by failing to properly evaluate the medical opinions in the record.  The ALJ also erred by failing to consider all of Plaintiff's established limitations in the RFC assessment.

### A.  Whether ALJ Failed to Properly Evaluate Medical Opinions in the Record

#### i.     *Whether ALJ Erred When he Gave Little Weight to Treating Physician's Opinion*

From 2009 to 2011, Dr. Norman Fawson served as Plaintiff's treating physician.  (Tr. 307-08, 423-26, 492-97.)  On June 15, 2011, Fawson submitted a half-page letter on Plaintiff's behalf.  (*Id.* 492.)  In the letter, Fawson opined that Plaintiff was "getting no relief from arthritic pain in [his] knees, ankles, and upper extremities and back."  (*Id.*)  Fawson also wrote that Plaintiff's "arthragia [sic] has been resistant to treatment both here and from his rheumatoidologist in . . . California."  (*Id.*)

The ALJ gave Fawson's opinion "little weight" because Fawson was "not a specialist in the field of rheumatology," and because "the objective evidence [did] not support" Fawson's "allegation" regarding unrelieved pain.  (Tr. 31.)

On appeal, Plaintiff argues the ALJ erred when he assigned less weight to Fawson's opinion simply because Fawson was not a specialist.  (Dkt. No. 16 at 11.)  However, the Court agrees with the Commissioner (Dkt. No. 21 at 15) that the ALJ reasonably considered Fawson's lack of a specialty when assessing Fawson's medical opinion.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (reiterating that treating source opinions must be weighed using factors such as "whether . . . the physician is a specialist in the area upon which an opinion is rendered . . . .") (citation omitted).  *See also Branum v. Barnhart*, 385 F.3d 1268, 1276 (10th Cir. 2004)

(affirming that ALJ could reject medical opinion for several reasons, including that doctor was not a specialist).

Plaintiff also argues that, contrary to the ALJ's statement, the record supports Fawson's allegation that Plaintiff suffered from treatment-resistant pain. (Dkt. No. 16 at 9.) More specifically, Plaintiff claims that none of the exhibits the ALJ cited (Tr. 25-26) "support[] a finding that [Plaintiff's] . . . pain was helped by medication or surgery . . . ." (Dkt. No. 16 at 9.)

After reviewing the record, the Court agrees with Plaintiff. The ALJ failed to thoroughly analyze evidence that showed Plaintiff only experienced minimal or short term improvements in pain. (Tr. 423-24, 466-74, 492-97.) As such, the ALJ erred when he concluded that the evidence did not support Fawson's allegation about Plaintiff's ongoing pain.

Nevertheless, the Court finds the ALJ committed harmless error not requiring remand. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (applying harmless error doctrine where "based on material the ALJ did at least consider (just not properly), [the reviewing court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.").

Despite giving little weight to Fawson's pain opinion, the ALJ still found Plaintiff "would experience pain with heavy lifting or prolonged periods of walking and/or standing and when kneeling." (Tr. 25.) As described above, the ALJ accounted for Plaintiff's pain by significantly reducing the RFC. (*Id.* 24.)

Moreover, neither Fawson's letter nor his treatment notes implicate further functional limitations or state Plaintiff's pain prevented him from working. (*Id.* 307-08, 423-25, 466-74, 492-97.) *See Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986) ("[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself

or in conjunction with other impairments, as to preclude any substantial gainful employment.") (quotation omitted).

Therefore, despite the ALJ's error, the Court concludes he reasonably accounted for Plaintiff's ongoing pain in the decision. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1165 (10th Cir. 2012) (concluding that ALJ committed "harmless error" where he failed to specify the weight he gave to a psychologist's opinion because the limitations the psychologist assigned "were not inconsistent with the limitations the ALJ placed" in the claimant's RFC).

### ii. Whether ALJ Erred When he Gave Great Weight to Consulting Physician's Opinion

On August 29, 2009, internal medicine specialist Dr. Justin Johnsen performed an "Internal Medicine Consultative Exam" on Plaintiff. (Tr. 102.) He produced a five-page exam report, concluding that Plaintiff could do most moderate and below activities without problems. (*Id.* 383-87.)

Thereafter, the ALJ assigned Johnsen's opinion "great weight" because Johnsen was "a specialist in his respective field," and because Johnsen offered an opinion "reasonably consistent with the medical evidence of record . . . ." (*Id.* 30.)

On appeal, Plaintiff argues the ALJ erred when he gave great weight to Johnsen's opinion because "[t]here is no evidence to show that" Johnsen was a rheumatology specialist. (Dkt. No. 16 at 6.) As such, he was "no more qualified than [] Fawson" to comment on Plaintiff's "pain due to osteoarthritis." (Dkt. No. 22 at 4.)

While Plaintiff makes a valid point, Johnsen commented primarily on Plaintiff's functional abilities rather than his osteoarthritic pain. Indeed, Johnsen provided a detailed functional analysis (Tr. 384-87) consistent with the state agency physicians' assessments (*id.* 409-15, 447-54).

Plaintiff also argues the ALJ erred by giving great weight to Johnsen's opinion because Johnsen incorrectly interpreted Plaintiff's neck x-rays. (Dkt. No. 16 at 12.) Johnsen stated he "had scans to review . . . and one scan showed *mild* osteoarthritic [neck] changes . . . ." (Tr. 386) (emphasis added.) To demonstrate Johnsen's error, Plaintiff cites (Dkt. No. 16 at 12) a 2008 x-ray summary located elsewhere in the record that notes "[*m*]*oderately severe* [neck] osteoarthritis . . . ." (Tr. 270) (emphasis added.)

However, Plaintiff offers no evidence that the "scan" Johnsen reviewed was the 2008 neck x-ray. Moreover, the Court agrees with the Commissioner that Johnsen's "opinion focused on Plaintiff's" neurologic "neck functioning" rather than the "x-ray interpretation of Plaintiff's degree of osteoarthritis." (Dkt. No. 21 at 16.) Johnsen personally examined Plaintiff's neck before concluding that he "did not see any neurologic dysfunction" in it. (Tr. 386.) Plaintiff fails to cite evidence that contradicts this conclusion. For all these reasons, substantial evidence supports the ALJ's decision to assign great weight to Johnsen's opinion.

### B. Whether ALJ Failed to Include all of Plaintiff's Established Limitations in the RFC Assessment

On appeal, Plaintiff argues the ALJ erred in his RFC assessment because he failed to consider Plaintiff's testimony about his pain, his anticardiolipin syndrome, and the side effects from his medications.

#### i. *Whether ALJ Erred When he Found Plaintiff's Pain Allegations Lacked Credibility*

In the RFC assessment, the ALJ noted that Plaintiff testified he suffered from joint pain, numbness in the hands, arms, and legs, as well as depression and panic attacks. (Tr. 24.) The ALJ then determined that Plaintiff's "statements concerning the intensity, duration and limiting

effects of these symptoms" lacked credibility. (*Id.*) More specifically, the ALJ concluded that Plaintiff's "allegations that he [was] incapable of all work activity" lacked credibility. (*Id.* 25.)

To support this conclusion, the ALJ stated that Plaintiff was "not always consistent and complaint [sic] with treatment." (*Id.*) The ALJ also stated that Plaintiff's "daily activities" were "inconsistent with his allegations of disabling pain . . . ." (Tr. 29.) Regarding this latter statement, the ALJ noted that Plaintiff maintained his grooming and hygiene, prepared simple meals, walked, drove, shopped, and used a computer. (*Id.*) On a daily basis, Plaintiff turned on a faucet to fill his horses' water trough, spread hay to feed them, and spent time with them. (*Id.*)

On appeal, Plaintiff argues the ALJ "failed to [] properly evaluate" Plaintiff's "credibility" regarding his pain allegations. (Dkt. No. 16 at 15.) For instance, the ALJ "fail[ed] to acknowledge the accommodations and help [Plaintiff] testified [were] needed to perform" daily living activities. (*Id.* at 17.) Plaintiff argues he changed his grooming/hygiene routine due to pain (Tr. 197). (Dkt. No. 16 at 17.) He spent only fifteen minutes with his horses before going back inside (Tr. 61). (Dkt. No. 16 at 17.) When he shopped with his wife, he mostly sat on a bench waiting for her (Tr. 63). (Dkt. No. 16 at 17.)

The Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's daily living activities were inconsistent with his pain allegations. Other than keeping a short haircut, Plaintiff provided no evidence that he changed his grooming/hygiene routine to accommodate his pain. (Tr. 197.) Plaintiff also testified that he lifted twenty pound hay bales to feed his horses "a couple times a day." (*Id.* 61, 65.) After spending fifteen minutes with the horses at any one time, he went back inside due to the heat, not due to pain. (*Id.* 61.) Moreover, after resting for fifteen to twenty minutes, Plaintiff testified he got back up to perform other

Page **8** of **11**

activities.  (*Id.* 62.)  Plaintiff also testified that he spent ten to twelve hours a day sitting at a computer and browsing the internet.  (Tr. 79.)

Plaintiff also argues that the ALJ improperly evaluated Plaintiff's pain credibility when he erroneously stated that Plaintiff failed to comply with treatment.  (Dkt. No. 16 at 15-16.)  The Court shares Plaintiff's legitimate concerns where the evidence the ALJ cited failed to show noncompliance.  (Tr. 25-26.)  As a result, the Court finds the ALJ erred when he found Plaintiff lacked credibility due to failure to comply with treatment.

However, the Court concludes the ALJ committed a harmless credibility error.  Despite his error, the ALJ still found Plaintiff "credible to the extent he would experience pain" lifting things, kneeling, standing, and walking.  (*Id.* 25.)  The ALJ accounted for the pain supported by the record in his RFC assessment.  That is, the ALJ listed numerous RFC limitations "consistent with or more restrictive than all of the physician opinions of record which addressed Plaintiff's actual functional limitations . . . ."  (Dkt. No. 21 at 9.)

### ii. *Whether ALJ Properly Assessed Plaintiff's Anticardiolipin Syndrome*

Blood tests suggest that Plaintiff suffers from anticardiolipin syndrome.  (Tr. 296-97, 307.)  Plaintiff claims that his anticardiolipin syndrome "has been linked to a skin rash that leaves multiple lesions on his arms and scalp."  (Dkt. No. 16 at 13.)  Plaintiff previously reported that the syndrome affects his ability to work because it causes his hands to dry, crack, and bleed.  (Tr. 383.)

On appeal, Plaintiff argues the ALJ erred because he failed to address Plaintiff's anticardiolipin syndrome within the RFC assessment.  (Dkt. No. 16 at 13.)  For instance, the ALJ provided no RFC limitations on Plaintiff's ability to use his hands and upper extremities.  (*Id.*)

Contrary to Plaintiff's assertion, the Court notes that the ALJ considered Plaintiff's anticardiolipin syndrome within the RFC assessment when he summarized Dr. Johnsen's findings. The ALJ noted the syndrome by name. (Tr. 26.) He acknowledged Plaintiff's forearm lesions, but noted they appeared self-induced. (*Id.*) The ALJ also emphasized Johnsen's opinion that the lesions "would not cause any limitations." (*Id.*)

Additionally, "the record contains only one objective finding" about hand lesions from a January 2010 treatment note (Tr. 469). (Dkt. No. 21 at 12.) All other treatment notes described the lesions as occurring on Plaintiff's scalp or forearms (Tr. 308, 385, 466-68). (Dkt. No. 21 at 12.) Plaintiff also testified to conducting numerous activities with his hands such as caring for his horses and using a computer. (*Id.* at 13.)

Given the meager objective evidence about limitations caused by anticardiolipin syndrome, the Court concludes the ALJ did not err. In other words, substantial evidence supports the ALJ's decision not to assign Plaintiff functional limitations due to anticardiolipin syndrome.

### iii.     *Whether ALJ Properly Assessed Medication Side Effects*

Plaintiff previously reported that his medications caused skin bleeding, muscle fatigue, face buzzes, swollen hands, ankles, and feet, as well as nausea, upset stomach, diarrhea, and constipation. (Tr. 230, 232, 248, 494.) At the administrative hearing, Plaintiff only testified that he thought the medications caused fatigue and red eyes. (*Id.* 67-68.)

On appeal, Plaintiff argues that the ALJ erred in his RFC assessment because he failed to consider how the aforementioned side effects would limit Plaintiff's ability to work. (Dkt. No. 16 at 14.) However, the Commissioner persuasively counters that "Plaintiff fails to advance any argument as to how the intensity, persistence, or duration of such side effects would interfere with his ability to perform work-related activities." (Dkt. No. 21 at 14.)

For instance, Plaintiff's attorney failed to elicit further testimony about side effects and how they impacted Plaintiff's ability to work.  *See Branum*, 385 F.3d  at 1271 (noting that when an attorney represents a claimant at his hearing, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored . . . .") (quotation omitted).

Additionally, it appears the only side effects Plaintiff complained about to a physician related to constipation.  (Tr. 494.)  Plaintiff made all other side effect complaints within the context of his social security application.  *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (discrediting claimant's need for a two hour nap each day because he failed to report this restriction to his physician).

Given the scant record regarding side effects and their impact on Plaintiff's work ability, the Court concludes the ALJ did not err.  Rather, substantial evidence supports the ALJ's decision not to assign Plaintiff functional limitations due to the aforementioned side effects.

### VII.   ORDERS

For the reasons set forth above, the Court **AFFIRMS** the Social Security Commissioner's decision.

Dated this 20th day of February, 2014.

By the Court:

_____
Dustin B. Pead
United States Magistrate Judge